**Manuel CRUZ, Plaintiff,**

v.

**GENERAL MOTORS CORPORATION (Chevrolet Division), R. K. Clark Chevrolet, Defendants.**

**No. 67 Civ. 257.**

United States District Court,
S. D. New York.

Jan. 22, 1970.

---

Esterman & Esterman, New York City, for plaintiff; Sylvain R. Jakabovics, New York City, of counsel.

Paul, Weiss, Goldberg, Rifkind, Wharton & Garrison, New York City, for defendant General Motors Corp.; Gerald D. Stern, Bernard Ouziel, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

On May 15, 1963, while on active duty with the United States Navy at the Naval Air Station, Virginia Beach, Virginia, plaintiff sustained serious injuries when his car which he was then driving swerved off the road and struck a telephone pole. He was removed by a rescue squad to a civilian hospital for emergency treatment and transferred later that same day to the Portsmouth Naval Hospital in Virginia. He remained there four months until, on September 2, 1963, he was transferred by the Navy to the Bronx Veterans Administration Hospital, New York City, where he was further continuously confined for another eight months, until May 1964. In all, he was hospitalized almost an entire year.

On September 19, 1964, while still hospitalized at Bronx Veterans Hospital, plaintiff, a career serviceman with over eleven years service, was placed on the Navy's Temporary Disability Retired List (Temporary List). He remained in that status until April 1, 1965, when he was transferred to the Retired List for Permanent Disability and is now concededly permanently retired from the Navy.

The car, a Chevrolet Corvair, which plaintiff was driving when he met with his accident had been purchased by him a month before. On January 20, 1967, he commenced this action against General Motors, the manufacturer of the car, and R. K. Clark Chevrolet, the dealer from whom he had purchased it in Virginia Beach, Virginia. General Motors is charged with negligence in the design and manufacture of the automobile and with breach of an express and implied warranty of fitness for intended use.

General Motors moves for summary judgment on the ground that the action is barred by the applicable statute of limitations. A number of basic questions are presented. First, whether the Soldiers' and Sailors' Civil Relief Act of 1940 [1] tolled the limitation period until April 1, 1965, when plaintiff was permanently retired for physical disability, or only until September 19, 1963, when he was placed on the Temporary Disability Retired List. If the toll was effective

---

1. 50 U.S.C.App. § 525 (1964).

until April 1, 1965, the action is not barred, since it was brought within two years of that date, the shortest limitation period under either Virginia or New York law. Second, if the toll was effective only until September 19, 1963, whether plaintiff was a resident of the State of New York, as well as Virginia, at the date of the accident when his claim accrued.[2] If he was then a resident of Virginia and nonresident here, his action would be barred by the Virginia two-year statute for personal injury claims.[3] Third, if he was also a New York resident, whether New York's six-year statute for breach of contract[4] is applicable to his claim for breach of warranty, in which case that claim would be timely.[5] However, his negligence claim would be barred by New York's three-year period for personal injury claims.[6] In light of our interpretation of the Soldiers' and Sailors' Civil Relief Act, we do not reach the last two questions.

Section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940 provides:[7]

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law * * * for the bringing of any action * * * by or against any person in military service * * *."

The "period of military service" is defined by section 101(2) as:[8]

" * * * the time between * * * the date of entering active service * * * [and] * * * the date of discharge from active service or death while in active service * * *."

---

2. Technically, plaintiff's two claims accrued at different dates: his negligence claim at the time of the accident and his breach of warranty claim at the time of purchase of the automobile. *See* Schwartz v. Heyden Newport Chemical Corp., 12 N.Y.2d 212, 215, 237 N.Y.S.2d 714, 716, 188 N.E.2d 142, cert. denied, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963); Munn v. Security Controls, Inc. (New York Corp.), 23 A.D. 2d 813, 258 N.Y.S.2d 475 (1965). However, for present purposes, the difference in dates is purely academic; for convenience, the date of the accident will be used in the text.

3. Under New York law, which controls in this diversity suit, *see* Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Rieser v. Baltimore & Ohio R. R., 123 F.Supp. 44 (S.D.N.Y.1954), aff'd, 228 F.2d 563 (2d Cir. 1955), cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956), the applicable statute of limitations in an action by a non-resident plaintiff on an out-of-state cause of action is the shorter of that of New York or the state where the cause of action arose. N.Y.C.P.L.R. § 202 (McKinney 1963); *see* Smalley v. Hutcheon, 296 N.Y. 68, 70 N.E.2d 161 (1946); Kahn v. Commercial Union of America, Inc., 227 App.Div. 82, 237 N.Y.S. 94 (1929); Smith v. American Flange & Mfg. Co., 139 F.Supp. 917 (S.D.N.Y.

1956). Virginia would apply its two-year limitation period, whether the action is based upon tort or contract. Friedman v. Peoples Service Drug Stores, Inc., 208 Va. 700, 160 S.E.2d 563 (1968); Va.Code § 8–24 (1950). The shortest applicable New York period, for personal injuries, is three years. N.Y.C.P.L.R. § 214(5) (McKinney 1963).

4. N.Y.C.P.L.R. § 213(2) (McKinney Supp. 1969). The four-year limitation provision of N.Y.U.C.C. § 2–725 (McKinney 1964) is inapplicable to causes of action which accrued before September 27, 1964. *Id.* § 2–725(4).

5. Despite the underlying similarity of the tort and breach of warranty claims, *see* Goldberg v. Kollsman Instrument Corp., 12 N.Y.2d 432, 436, 240 N.Y.S.2d 592, 594–595, 191 N.E.2d 81 (1963), New York would still apply a contract limitation period to the breach of warranty claim. *See* Schwartz v. Heyden Newport Chemical Corp., 12 N.Y.2d 212, 237 N. Y.S.2d 714, cert. denied, 374 U.S. 808, 83 S.Ct. 1697, 10 L.Ed.2d 1032 (1963); Blessington v. McCrory's Stores Corp., 305 N.Y. 140, 111 N.E.2d 421, 37 A.L.R. 2d 698 (1953); Mendel v. Pittsburgh Plate Glass Co., 57 Misc.2d 45, 291 N.Y. S.2d 94 (Sup.Ct.1967), aff'd mem., 29 A.D.2d 918, 290 N.Y.S.2d 186 (1968).

6. N.Y.C.P.L.R. § 214(5) (McKinney 1963).

7. 50 U.S.C.App. § 525 (1964).

8. *Id.* § 511(2).

These terms are further defined by section 101(1), which provides in part: [9]

"\* \* \* The term 'military service', as used in this Act, shall signify Federal service on active duty with any branch of service \* \* \* as well as training or education under the supervision of the United States preliminary to induction into the military service. The terms 'active service' or 'active duty' shall include the period during which a person in military service is absent from duty on account of sickness, wounds, leave, or other lawful cause."

Thus, under the Act, a serviceman's period of military service ends with the date of discharge from "active service" and his active service includes the period he is absent from duty "on account of sickness."

In the instant case, it is undisputed that at the time of the accident plaintiff was on active duty or active service (the terms are synonymous [10]) and that as a result of the injuries sustained he was "absent from duty" and for "lawful cause." However, the thrust of the defendant's position is that plaintiff's "active duty" in the military was not just interrupted, but ended on September 19, 1963, when he was placed on the Temporary Disability Retired List; that the absence contemplated by section 101(1) is only a short-term furlough, sick leave, or stay in sick bay. Accordingly it contends the tolling provisions ceased to run in plaintiff's favor on September 19, 1963. In support of this contention defendant relies upon the definition of "ac-tive duty" contained in Title 10 of the United States Code, the general military law which, for the purposes of that title, defines "active duty" as "full-time duty in the active military service of the United States." [11] Defendant notes that plaintiff's transfer to the Temporary List was treated by the Navy as a "release from active duty." However, although the Relief Act uses terminology familiar to military personnel,[12] the use of similar language by the Navy in its administrative assignment of personnel and the definitions of Title 10 which are not, by their terms, applicable to the Relief Act, cannot be dispositive here. The provisions of Title 10 concern primarily the structure, manpower authorization and pay and retirement scale of the armed forces. The definitions in that title are constructed accordingly. Since the tolling provision of the Relief Act is contained in a different title which was enacted for the benefit of those in military service,[13] the Act's definitions and purpose control. The Supreme Court has repeatedly admonished that the Act is to be liberally construed in favor of the servicemen who have answered their country's call to duty.[14] So viewed, and considered against the purpose of the Temporary List, the Court is persuaded that under the tolling provisions of the Relief Act plaintiff was in active service until he was retired for permanent disability on April 1, 1965.

The Temporary List is an interim status for a serviceman eligible for permanent retirement whose disability has not yet been sufficiently stabilized to permit

9. *Id.* § 511(1).

10. *See* Soldiers' & Sailors' Civil Relief Act § 101(1), 50 U.S.C.App. § 511(1) (1964), quoted above. *See also* 10 U.S.C. § 101(24) (1964).

11. 10 U.S.C. § 101(22) (1964).

12. *Cf.* Hearings and Memoranda Before a Subcomm. of the Sen. Comm. on the Judiciary on S. 2859 & H.R. 6361, 65th Cong., 1st & 2d Sess. 28 (1918).

13. *See* Soldiers' & Sailors' Civil Relief Act, § 100, 50 U.S.C.App. § 510 (1964).

14. Le Maistre v. Leffers, 333 U.S. 1, 68 S.Ct. 371, 92 L.Ed. 429 (1948); Boone v. Lightner, 319 U.S. 561, 575, 63 S.Ct. 1223, 87 L.Ed. 1587, rehearing denied, 320 U.S. 809, 64 S.Ct. 26, 88 L.Ed. 489 (1943).

an accurate final determination.[15] Status on the Temporary List may not be continued beyond five years, during which period the disabled serviceman must submit to physical examination at least every eighteen months to ascertain whether he is eligible to remain on the List.[16] At the end of the five-year period, if found to be permanently disabled, his name is removed from the Temporary List and he is permanently retired.[17] If his disability has improved sufficiently to permit him to perform his duties once again, then with his consent he is reinstated to his regular component at the same or the next higher grade he held when placed on the Temporary List.[18] While on the List a serviceman receives retirement pay which terminates when he is removed therefrom.[19] When required to travel for his periodic examination, he is entitled to active duty travel and transportation allowances.[20] The Temporary List is thus an interim device to safeguard the interests of both the Navy and the serviceman during the period a man's physical condition is under review; the Navy will not prematurely lose a member through permanent retirement who subsequently recovers from the disability which caused him to be unfit for duty, while the serviceman will not receive an unjustifiably low disability retirement allowance if his condition subsequently develops into a more serious permanent disability.[21] During this interim period he has not been discharged from service, but his status is subject to final disposition by the Navy.

■ When, on September 19, 1963, four months after the accident, plaintiff was placed on the Temporary List, he was under Navy hospitalization and treatment, which continued for another eight months. Under the terms of the Relief Act he was lawfully "absent from duty" on account of his injuries, awaiting a final evaluation of those injuries, which would be determinative of whether he was to be returned to duty or permanently retired. That status continued until the final determination was made that he be permanently retired for physical disability on April 1, 1965. Not until that date did the tolling provision cease operating in his favor—that was the date of his discharge from active service.[22] Section 101 of the Relief Act, which defines the period of military service in broad terms,[23] including, as already noted, the period of absence from duty on account of sickness, supports, if indeed it does not compel, such a conclusion, and any doubt must be resolved in favor of a broad reading to benefit the injured serviceman.[24] Such a construction is consonant with the plaintiff's actual status. During the period following the accident, as already noted, he was in military hospitals under the care and control of the Navy for a full year. The record here does not indicate how long, if at all,

15. *See* 10 U.S.C. § 1202 (1964).

16. *Id.* § 1210.

17. *Id.*

18. *Id.* §§ 1210–11.

19. *Id.* §§ 1202, 1210, 1211(d).

20. *Id.* § 1210(g).

21. United States Department of Defense, Uniform Implementation of Laws Relating to Separation from the Military Departments by Reason of Physical Disability, D.O.D. Directive 1332.18, ¶ V (G)(1) at 9–10 (Sept. 9, 1968).

22. *See* Lang v. Lang, 176 Misc. 213, 25 N.Y.S.2d 775 (N.Y.Sup.Ct.1941).

23. For example, "military service" includes "training or education under the supervision of the United States preliminary to induction into the military service." § 101(1), 50 U.S.C.App. § 511 (1) (1964). *See also* § 106, 50 U.S.C. App. § 516 (persons ordered to report for induction entitled to benefits of the Act even before induction).

24. *Cf.* Shayne v. Burke, 158 Fla. 61, 27 So.2d 751 (1946).

he was unconscious after the accident. But the seriousness of his injuries—the diagnosis was "transection spinal cord," a severed spinal cord, and upon the argument it was stated that as a result he is a quadraplegic—suggests that thoughts of a lawsuit during his confinement at the military installations were not his most pressing concern. The fact that on September 19, 1963, four months after the accident, while still confined at the hospital and there to remain another eight months, the Navy placed him on the Temporary Disability Retired List in order to evaluate his final disability, hardly suggests that thereupon his ability to begin preparation for asserting a legal claim against those allegedly responsible for his condition suddenly increased. Yet if defendant's position were to be upheld, it would follow that the Relief Act's tolling provisions would cease to run on that day, no matter what the nature of plaintiff's physical or mental condition. Any such construction of the statute hardly accords with the Congressional purpose. The protection of a serviceman who is unable to attend to his affairs, whether because he is stationed away from home in active service or is recovering from injuries incurred while in such active service, is the very purpose the Relief Act is designed to serve.

The Court therefore holds that the period of limitations was tolled by section 205 of the Relief Act until April 1, 1965, when plaintiff was placed on the retirement list for permanent disability. Since the action was brought less than two years thereafter, none of the potentially applicable statutes of limitations have run and plaintiff's claims are not barred. This disposition makes it unnecessary to determine which of New York's or Virginia's statutes of limitations is applicable.

The motion for summary judgment is denied.