TARANTO, Circuit Judge.
Commander Judith L. Cronin appeals the final judgment of the Court of Federal Claims granting judgment on the administrative record for the United States and dismissing her complaint, which alleged a wrongful denial of a promotion and an unduly low disability rating by the Navy. Cronin v. United States, 108 Fed.Cl. 39 (Fed.Cl.2012) (“Opinion ”). The Trial Court concluded that her claims were not time barred but that she had failed to demonstrate reversible error on the merits. We hold that most of her claims were time barred, which means that there was no jurisdiction to decide them. As to one group of claims, i.e., those alleging post: traumatic stress disorder, there is no timeliness issue, but we see no error in the Trial Court’s rejection of those claims on the merits.
I. BACKGROUND
Commander Cronin was on active duty with the Navy from 1977 until the Navy placed her on the Temporary Disability Retired List (sometimes “TDRL” or “List”) on May 31,1996. Cronin v. United States, 98 Fed.Cl. 268, 269 (Fed.Cl.2011) (“Cronin III ”). During and after her service, she experienced a number of physical ailments and injuries. In 1978, she began experiencing problems with her right heel as a result of a calcaneal spur, and she had surgeries in 1979, 1993, 1994, and 1995 attempting to correct the problems. The surgeries were unsuccessful, and by 1995 the right-heel problem produced ongoing foot pain, pain in other parts of her body from walking on her right foot (even with orthotics), and an uneven gait. Opinion at 53. In 1979 or 1980, she began to experience other ailments, for which she received treatment from 1984 at least until 1998. Id. at 53-54. She was hospitalized for bipolar disorder in 1995. Id. at 57-58. Beginning in approximately 1998, medical professionals expressed differing opinions about whether she was suffering from bipolar disorder, anxiety disorder, post-traumatic stress disorder (“PTSD”), or some combination of those disorders. Id. at 58-59. In September 1999, she was diagnosed with chronic pain. Id. at 57. Commander Cronin has alleged that during her period of service, she was subjected to multiple physical and sexual assaults, stalking, and “extreme sexual harassment.” J.A. 129. At least one medical professional, a social worker, wrote a re *1333 port describing such assaults and harassment as supporting a PTSD diagnosis. Opinion at 59.
The Navy’s Medical Evaluation Board reviewed Commander Cronin’s condition on November 15, 1993, and April 16, 1994, and each time recommended that she be placed on limited duty due to the right-heel injury. J.A. 128. The second period of limited duty had an expiration date of September 12, 1994. Id. In May 1994, the Navy had selected Commander Cronin, then a Lieutenant Commander, for promotion to the rank of Commander, which was set to occur on October 1, 1994. J.A. 75; Opinion at 42. She was “frocked” to the rank of Commander on August 25, 1994 and, that same month, underwent one of her heel surgeries. In an August 1994 letter, however, a Navy physician found that Commander Cronin was not fit for full duty. Opinion at 42. In a letter that carries the date September 30, 1994, the Chief of Naval Personnel notified her that she was found not fit for duty — referring to a Medical Evaluation Board report that did not issue until October 5, 1994 — and announced that her promotion would be delayed. Id. The letter offered Commander Cronin the opportunity to challenge the delay of her promotion within ten days of her receipt of this letter. Id. She received the letter by October 14, 1994, and she responded on October 26,1994. Id.
The Navy referred Commander Cronin’s case to its Disability Evaluation System, and in October 1995 the Navy’s Physical Evaluation Board received the case for review. Id. at 42-43. That Board evaluated six of Commander Cronin’s physical ailments and placed each into one of three categories: (1) unfitting conditions; (2) conditions that contribute to unfitting conditions; and (3) conditions that are not separately unfitting and do not contribute to unfitting conditions. Based on its disability findings, the Board found her unfit to perform her duties, assigned her a disability rating of 60%, and, because her conditions had not yet stabilized, stated that she was to be placed on the Temporary Disability Retired List, according her disability benefits. Id. at 43; J.A. 96-99.
In January 1996, Commander Cronin challenged the delay in her promotion before a different Navy board, namely, the Board for Correction of Naval Records. The Board for Correction, in mid-May 1996, determined that the delay was justified based on the concerns over her fitness for full duty. Id. On May 31, 1996, Commander Cronin was issued Form DD-214, formally placing her on the Temporary Disability Retired List and simultaneously promoting her to Commander. Cronin III at 269.
Having been placed on the TDRL, Commander Cronin was subject to reevaluation of her conditions every 18 months in order to continue receiving disability benefits. Opinion at 43. In March 2000, the Physical Evaluation Board concluded that her conditions had not yet stabilized but made several adjustments, for various reasons, to her disability rating. It was during the proceedings in which those adjustments were made that Commander Cronin first raised post-traumatic stress disorder as an issue. Ultimately, in August 2000, the Physical Evaluation Board declined to find a compensable claim of PTSD because there had been no finding, at the time she was placed on the List in 1996, that such a condition rendered her unfit for duty. The Physical Evaluation Board appears to have reached the same conclusion with respect to the chronic pain disorder. And it concluded that her conditions had stabilized, so that on October 1, 2000, after the August decision became final, the Navy placed her on the Permanent Disability Retired List, permanently retiring her. *1334 Id. Commander Cronin challenged the findings before the Board for Correction, which in 2004 denied her relief. Id. at 43-44.
Commander Cronin filed suit on September 7, 2006, challenging the Board for Correction’s 1996 decision regarding her delayed promotion and its 2004 decision regarding her disability rating. Cronin III at 269. The Trial Court initially ruled that all but the PTSD-related claims were time barred and that the decision related to PTSD was not arbitrary and capricious, but it remanded to the Board for Correction for reevaluation of Commander Cronin’s annuity payments. Id. On appeal to this court, we vacated the judgment and remanded for the Trial Court to consider whether the Servicemembers Civil Relief Act of 2003, Pub.L. No. 108-189, § 206, 117 Stat. 2835, 2844 (2003) (codified at 50 U.S.C. app. §§ 511(2), 526(a)), tolled the statute of limitations and, if so, whether the disabling conditions were exacerbated by PTSD. Cronin v. United States, 363 Fed.Appx. 29 (Fed.Cir.2010).
On remand, the Trial Court concluded that the 2003 Relief Act does toll the statute of limitations during the time a service member is on the Temporary Disability Retired List, so that all of Commander Cronin’s claims were timely. Cronin III at 278. The Trial Court then remanded to the Board for Correction for consideration of her PTSD claims, but the Board for Correction subsequently declined to increase her disability rating. Opinion at 42. Commander Cronin appealed that decision to the Trial Court, which affirmed on cross motions for judgment on the administrative record. Opinion at 61.
Commander Cronin appeals. This court has jurisdiction under 28 U.S.C. § 1295(a)(3).
II. Standards of Review
The proper interpretation of the Relief Act’s tolling provision as it relates to the Temporary Disability Retired List is a legal issue of first impression for this court. We decide such issues of statutory interpretation de novo. Cemex, S.A. v. United States, 384 F.3d 1314, 1319 (Fed.Cir.2004).
We also review the Trial Court’s judgment on the administrative record de novo, applying the same standard of review to the Board for Correction decision as the Trial Court applied. Melendez Camilo v. United States, 642 F.3d 1040, 1044 (Fed.Cir.2011). Our review is limited to determining whether a Board for Correction decision “is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations.” Id. (internal quotation marks omitted).
III. Discussion
A. The Relief Act’s Tolling Provision
We conclude that, except for the claims based on posttraumatic stress disorder, Commander Cronin’s claims were time barred, because the Servicemembers Civil Relief Act, 50 U.S.C. app. §§ 511(2), 526(a), did not toll the six-year statute of limitations, 28 U.S.C. § 2501, for the 4 years and five months that she was on the Temporary Disability Retired List under 10 U.S.C. § 1202. Untimeliness under this statute of limitations is “jurisdictional.” John R. Sand & Gravel Co. v. United States, 552 U.S. 130, 134, 128 S.Ct. 750, 169 L.Ed.2d 591 (2008). Accordingly, our conclusion regarding lack of timeliness requires that we vacate the judgment on the non-PTSD claims and remand for dismissal of those claims for lack of jurisdiction.
Putting aside the PTSD claim, the parties agree that Commander Cronin’s claims accrued more than six years before she filed suit in the Court of Federal *1335 Claims in September 2006, which makes them out of time under the six-year statute of limitations, 28 U.S.C. § 2501, unless some of the period is excluded from the time counted. They also agree, however, that all claims here are timely if the time that Commander Cronin spent on the Temporary Disability Retired List — from May 31, 1996, to October 1, 2000 — is not counted. The question therefore is whether time spent on the List is to be excluded in computing the time from accrual to suit.
The 2003 Relief Act, updating earlier statutes, declares that “[t]he period of a servicemember’s military service may not be included in computing any period ... for the bringing of any action ... by ... the servicemember.” 50 U.S.C. app. § 526(a). The Act also defines “military service.”
The term “military service” means — (A) ... (i) active duty, as defined in [10 U.S.C. § 101(d)(1) ], and (ii) in the case of a member of the National Guard, includes service under a call to active service ...; (B) in the case of a service-member who is a commissioned officer of the Public Health Service or the National Oceanic and Atmospheric Administration, active service; and (C) any period during which a servicemember is absent from duty on account of sickness, wounds, leave, or other lawful cause.
50 U.S.C. app. § 511(2). The parties agree that Commander Cronin was not on “active duty” once she was placed on the Temporary Disability Retired List.[1] The matter in dispute is whether she was “absent from duty on account of sickness, wounds, leave, or other lawful cause” once she was placed on the List.
The phrase “absent from duty,”' alone and in context, fairly implies that the clause applies only when the duty to engage in active service remains in place during, and fulfillment is excused only by, sickness, wounds, leave, or other cause. The implication of the phrase “absent from duty” is that there is a persisting duty, but the member of the service is, for good reason, temporarily unable to fulfill it. The context, moreover, indicates that the duty that persists (subject to the excuse) is one of “active” service, not, for example, a duty to remain in reserve or even to show up for two weeks of training as a member of the National Guard (see Bowen v. United States, 292 F.3d 1383, 1386-87 (Fed.Cir.2002)). The “absent from duty” clause follows three clauses all of which are about active service. This last clause is naturally understood to complement and round out, not fundamentally depart from, the core condition of being subject to the military’s control to order active service when conditions permit. In its language and in context, the “absent from duty” clause thus fairly encompasses only a situation in which the active-service duty remains — in which military authority to compel active service remains — during a period when, for good cause, the member of the service cannot engage in the otherwise-required active service.
A member of the Navy like Commander Cronin who has been placed on the Temporary Disability Retired List — for a disability that “may be of a permanent nature” but that may change, 10 U.S.C. § 1202 — is not subject to an ongoing but suspended duty to serve. Simply, the military cannot order her back to active ser *1336 vice, even if the sickness, injury, leave, or other cause for having stopped active service no longer prevents active service. For the Navy to return her to active duty, she must “consent.” 10 U.S.C. § 1211(b).
More specifically, the statute provides for periodic medical examinations to evaluate the status of disabilities of persons on the Temporary Disability Retired List and requires a final decision within five years. 10 U.S.C. § 1210(a), (b). If the disability is deemed permanent and stable, retirement or separation follows, depending on the degree of disability and length of service. Id. § 1210(c)-(e). If deemed fit, the member is to reenter active service upon giving consent, or to be discharged, retired, eliminated from active service, or transferred to certain reserve units (voluntarily, as relevant here). Id. §§ 1210(f), 1211.[2] If she does not consent to reentering active service, and she is not discharged, retired, or (voluntarily) transferred to certain reserve units, her “status on the temporary disability retired list and [her] disability retired pay shall be terminated as soon as practicable and the member shall be discharged.” Id. § 1211(c).
In this statutory scheme, a service member’s obligatory active military service ends upon placement on the Temporary Disability Retired List. It is her option not to return to active service even if later found to be physically fit. The duty to serve has ended. Reflecting the end of duty, the Navy issued Defense Department Form 214, Certificate of Release or Discharge from Active Duty, to Commander Cronin upon placing her on the Temporary Disability Retired List, effective June 1, 1996. J.A. 104-05. No new Form 214 was issued when, on October 1, 2000, seven months before the five-year deadline arrived, the Navy placed her on the Permanent Disability Retired List. J.A. 51.[3]
Other aspects of the statutes governing the List, though perhaps not sufficient if they stood alone, reinforce the point that is crucial given the “duty” language of section 511(2)(C) — that placement on the List is not a pause in, but a termination of, the active-service duty that is the subject of section 511(2). Thus, even when a member who has been placed on the List consents to return to active duty, the statutory process is not simple recall but, generally, reappointment (with Senate advice and consent if the rank is high enough) or reenlistment. Id. § 1211(b). A new duty is created, though the military is authorized (not required) to give credit, for seniority purposes, for time on the List. Id. § 1211(e).
Statutory provisions addressing military pay further reinforce the point. A person placed on the Temporary Disability Retired List is considered temporarily retired and therefore receives only retired-member pay. Id. §§ 1202, 1210(a). That pay status continues unless and until she “is appointed, reappointed, enlisted, or reenlisted.” Id. § 1211(d)(3). In contrast, a service member who is “absent because of sickness or-wounds, or who is directed ... *1337 to be absent from duty to await orders pending disability retirement proceedings for a period that is longer than the leave authorized” by 10 U.S.C. § 701 is “entitled to the pay and allowances to which he would be entitled if he were not so absent.” 37 U.S.C. § 502(a). (Pay is, in general, forbidden for overlength leave for other reasons. Id. § 502(b).) These provisions underscore the distinction between absences from a still-extant duty and the status of a service member once placed on the Temporary Disability Retired List, when no continuing duty of service exists.
The statutory statement of purposes does not change this conclusion. Congress stated that “[t]he purposes of the” 2003 Act are
(1) to provide for, strengthen, and expedite the national defense through protection extended by this Act to service-members of the United States to enable such persons to devote their entire energy to the defense needs of the Nation; and
(2) to provide for the temporary suspension of judicial and administrative proceedings and transactions that may adversely affect the civil rights of ser-vicemembers during their military service.
50 U.S.C. app. § 502. Even by its terms, this statement does not declare an unqualified purpose to enable a service member to focus on improving health to return to active service. It declares both a purpose to advance the national defense “through protection extended by this Act,” that specified degree of protection being intended to enable service members to concentrate on defense needs, id. § 502(1), and a purpose to provide for temporary suspension of certain specified civil proceedings and transactions during “military service,” a defined term, id. § 502(2). Section 502 itself thus reinforces the background recognition that “no legislation pursues its purposes at all costs,” so that what a statute prescribes in its operational provisions, fairly construed in light of language, structure, and purposes, controls interpretation. Rodriguez v. United States, 480 U.S. 522, 525-26, 107 S.Ct. 1391, 94 L.Ed.2d 533 (1987); see, e.g., CTS Corp. v. Waldburger, — U.S. —, 134 S.Ct. 2175, 2185, 189 L.Ed.2d 62 (2014); Freeman v. Quicken Loans, Inc., — U.S. —, 132 S.Ct. 2034, 2044, 182 L.Ed.2d 955 (2012). Here, Congress defined how far civil-proceeding and other protections would extend by drawing a line defined by the language of 50 U.S.C. app. § 511 — a line that does not separate those unable to attend to legal affairs from those able to do so: both groups may be found among persons on the Temporary Disability Retired List, just as both groups may be found among persons who are permanently retired (and thus undisputedly outside § 511). For the reasons stated, we do not think that the language Congress adopted covers a service member who has been formally placed on the Temporary Disability Retired List.
Precedents on the issue presented are not determinative. One set of decisions supports our conclusion. Thus, in statutory contexts other than the application of 50 U.S.C. app. §§ 511 and 526, precedents of this court and others have treated placement on the Temporary Disability Retired List as relieving a service member of a duty to serve. Craft v. United States, 210 Ct.Cl. 170, 544 F.2d 468, 471, 476 (1976) (“[a] serviceman who is on the List is separated from the Army, but his final status is deferred pending additional medical evidence”; service member on List is “actually separated from the military”); Dambrava v. Office of Personnel Mgmt., 466 F.3d 1061, 1063 (Fed.Cir.2006) (10 U.S.C. § 1211 “indicates that the status of *1338 a member on the [Temporary Disability Retired List] is akin to inactive duty or retirement, .as opposed to ‘active service’ ”); Bradley v. United States, 161 F.3d 777, 781-82 (4th Cir.1998) (Feres doctrine exception to Federal Tort Claims Act liability); Cortez v. United States, 854 F.2d 723, 726 (5th Cir.1988) (same); see also Dean v. United States, 92 Fed.Cl. 133, 152-54 (Fed.Cl.2010) (adopting this view under 50 U.S.C. app. §§ 511 and 526), aff’d, 416 Fed.Appx. 908 (Fed.Cir.2011).
On the other hand, the contrary conclusion drawn by Judge Linn in his opinion— that a person on the Temporary Disability Retired List is absent from duty under section 511(2)(C) — finds support in two decisions: Mason v. Texaco Inc., 862 F.2d 242 (10th Cir.1988); and Cruz v. General Motors Corp., 308 F.Supp. 1052 (S.D.N.Y. 1970). The courts in those cases applied the Soldiers’ and Sailors’ Civil Relief Act of 1940, Act Oct. 17, 1940, ch. 888, 54 Stat. 1178, which (in § 101, 54 Stat. 1179) contained the same “absent from duty” phrase as current section 511 and (in § 205, 54 Stat. 1181) provided for exclusion of “military service” periods from computations of limitations periods. The Mason and Cruz courts held that time on the List was excluded for limitations purposes.
In our view, Mason and Cruz, which are not binding on this court, offer an insufficiently persuasive answer to the statutory analysis set forth above. Mason draws its conclusion without any analysis, simply citing Cruz. See 862 F.2d at 245. Cruz, while it recites Title 10 provisions as making presence on the Temporary Disability Retired List a kind of “interim status,” ultimately rests on its treatment of the 1940 Relief Act as governed by its own distinct purposes and the need to construe that Act liberally for members of the armed services. 308 F.Supp. at 1055-56.[4] That rationale does not seem to us to give sufficient weight to the natural meaning of the “absent from duty” clause, given its language and setting, or to. the provisions of Title 10 that make clear that the duty to serve ends for a service member placed on the List.
Our conclusion is not changed by the fact that Congress comprehensively amended the 1940 Act in 2003, after Cruz and Mason were handed down. It made some changes in section 511, such as adding an express reference to Title 10, see note 4, supra, but it carried forward the “absent from duty” clause. Sometimes reenactment without relevant change has been understood to incorporate settled judicial interpretations. See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, 559 U.S. 573, 589-90, 130 S.Ct. 1605, 176 L.Ed.2d 519 (2010) (“We have often observed that when ‘judicial interpretations have settled the meaning of an existing statutory provision, repetition of the same language in a new statute indicates, as a general matter, the intent to incorporate its ... judicial interpretations as well.’ ”) (citations omitted). We do not believe, however, that there is a sufficient basis for drawing such a conclusion here, even aside from the changes made in 2003.
*1339 “Settled” is not justified as a characterization of pre-2003 determinations of how the “absent from duty” clause applies to Temporary Disability Retired List status. Cruz and Mason are too small a foundation for that characterization, especially in light of the treatment of Temporary Disability Retired List status in other precedents, as discussed above. Moreover, while the 2003 House Report 108-81 cites a large number of judicial decisions in its descriptions of existing standards, reflecting the scope of the recodification effort, the report mentions neither Cruz nor Mason nor the conclusion they reached; nor does anything else from the legislative history we have seen. In these circumstances, we do not see a basis in the pre-2003 judicial decisions, or in the legislative history generally, for overcoming our inference about the fairest reading of section 511 as applied to a person placed on the Temporary Disability Retired List.
For the foregoing reasons, we conclude that all of Commander Cronin’s claims except her claim alleging post-traumatic stress disorder were untimely and thus must be dismissed for lack of jurisdiction.[5]
B. Commander Cronin’s PTSD Claims
There is no timeliness issue as to Commander Cronin’s claims based on post-traumatic stress disorder. Evidently the government accepts that the claims based on PTSD accrued sufficiently late that the 2006 assertion of those claims was timely without need for a tolling of the limitations period by the 2003 Relief Act.
Commander Cronin challenges her disability rating with respect to PTSD. She argues that the Navy ignored evidence of her PTSD condition, failed to recognize that the evoking stressors occurred before she was placed on the Temporary Disability Retired List, and failed to recognize that the Physical Evaluation Board itself acknowledged in 2000 that she suffered from PTSD and, at least in part, compensated her for her PTSD. She also argues that her PTSD worsened her migraines and chronic pain and other conditions.
The legal background for consideration of Commander Cronin’s claims includes the Veterans Affairs Schedule for Ratings Disability (“VASRD”) established by the Department of Veterans Affairs as the standard for assigning percentage ratings for disabilities. U.S. Dep’t of Navy, Sec’y of the Navy Instr. 1850.4E (“DES”) § 3801(b). “The percentage ratings represent, as far as can practicably be determined, the average impairment in civilian occupational earning capacity resulting from certain diseases and injuries, and their residual conditions.” Id. But there are “differences between military department and DVA applications of rating policies for specific cases, [and] differences in ratings may result.” DES § 3802(a). Importantly, the mere presence of a VASRD-rated condition is not sufficient to justify a disability rating from the Navy because “[c]onditions that do not themselves render a service member Unfit for military service will not be considered for determining the compensable disability rating unless those conditions contribute to the finding of unfitness.” DES § 3802(g).
Accordingly, Physical Evaluation Board findings regarding disabilities are arranged in three categories: unfitting conditions (category I); conditions that contribute to unfitting conditions (category II); and conditions that are not separately *1340 unfitting and do not contribute to the unfitting condition (category III). DES § 4111. Only conditions in categories I and II receive a rating. Id. Further, DES § 3804(k) provides that “[a] member may be determined Unfit as a result of the overall effect of two or more impairments even though each of them, standing alone, would not cause the member to be referred into the DES or found Unfit because of physical disability.”
With respect to the Temporary Disability Retired List, DES § 3618 provides the procedure for rating conditions that were not found unfitting at the time the service member was placed on the List but that are identified while the service member is on the List. Specifically, the “new” condition is compensable if it is (a) unfitting and either (b) caused by the condition for which the service member was placed on the List (or directly related to its treatment) or (c) incurred while the member was entitled to basic pay and was “an unfitting disability at the time the member was placed on the TDRL.” Id. Otherwise, even if the condition is traced back to the period of service, “such conditions shall be deemed unfitting due to the natural progression of the condition and noncompensable.Id.
On May 31, 1996, when Commander Cronin was placed on to the Temporary Disability Retired List, none of the Navy’s medical boards had evidence, or made any determination, that she was unfit for duty by virtue of PTSD. Evidence that she suffered from PTSD began to appear in 1998. Opinion at 58-59. Under the governing regulation, PTSD must be considered a new condition because it was not found to be an unfitting condition at the time she was placed on the List. DES § 3618. Such a condition is compensable only if it was caused by one of the conditions that was found to be unfitting at that time (or treatment of such a condition) or if it was separately an unfitting disability itself at that time.
Commander Cronin does not appear to argue to this court that her PTSD was caused by one of the conditions found to be unfitting at the time she was placed on the TDRL. In any event, when she previously argued that PTSD resulted from her bipolar disorder, the Board for Correction considered the argument and rejected it. Although a social worker considered her hospitalization for bipolar disorder in 1995 to be a factor contributing to the PTSD, numerous other medical professionals did not. Opinion at 60. Accordingly, the Board for Correction’s decision is supported by substantial evidence.
Commander Cronin gives a detailed account of the egregious evoking stressors that may have contributed to the eventual PTSD diagnosis. None of the evidence, however, indicates that the PTSD condition was unfitting at the time she was placed on the List in 1996, which is the only other way her PTSD could be com-pensable under DES § 3618. Although it is possible that the medical professionals misdiagnosed her before May 31, 1996, the medical evidence even from 1998 and later demonstrates a lack of consensus with respect to a PTSD diagnosis. Opinion at 59-61. Moreover, while the Board for Correction commented in 2004 that a 2000 Physical Evaluation Board rating of Commander Cronin’s bipolar disorder stated that the disorder “likely” included some impairment “incident” to her diagnosed PTSD, this is not sufficient evidence that her PTSD was unfitting as of May 31, 1996. Accordingly, the Board for Correction’s decision to deny compensability for the PTSD is supported by substantial evidence.
Commander Cronin relatedly argues that her PTSD has worsened her mi *1341 graines, chronic pain, fibromyalgia, tem-peromandibular joint disorder, and carpal tunnel syndrome. This argument does not add anything to her basic PTSD argument. Those conditions were not found unfitting before May 31, 1996; indeed, all were either raised and rejected, or could have been raised but were not, by that time. Commander Cronin has shown nothing establishing that the Board for Correction committed reversible error, under our deferential standard of review, in not finding that the PTSD, either directly or through worsening of these other conditions, rendered her unfit for duty before she was placed on the Temporary Disability Retired List.
IV. Conclusion
For the forgoing reasons, the decision of the Trial Court is affirmed respecting the PTSD claims but otherwise vacated, with the matter remanded so that the non-PTSD claims may be dismissed for lack of jurisdiction.
AFFIRMED IN PART, VACATED AND REMANDED IN PART.
Each party shall bear its own costs.

. 10 U.S.C. § 101(d)(1) states: “The term ‘active duty' means full-time duty in the active military service of the United States. Such term includes full-time training duty, annual training duty, and attendance, while in the active military service, at a school designated as a service school by law or by the Secretary of the military department concerned. Such term does not include full-time National Guard duty."

. For a naval officer like Commander Cronin, section 1210 refers to the Fleet Reserve. Besides other conditions, transfer into the Fleet Reserve requires the officer’s consent. 10 U.S.C. § 6330.

. A 2009 Report of the Government Accountability Office concluded that, across the entire Department of Defense, "very few who were placed on the list between calendar years 2000 and 2003 returned to military service. Further, about half received a final determination within 3 years....” United States Government Accountability Office, Military Disability Retirement: Closer Monitoring Would. Improve the Temporary Retirement Process at i (Report to the Ranking Member, Committee on Oversight and Government Reform, U.S. House of Representatives) (GAO 29-09-289 April 2009).

. “[T]he definitions of Title 10 which are not, by their terms, applicable to the Relief Act, cannot be dispositive here. The provisions of Title 10 concern primarily the structure, manpower authorization and pay and retirement scale of the armed forces. The definitions in that title are constructed accordingly. Since the tolling provision of the Relief Act is contained in a different title which was enacted for the benefit of those in military service, the Act’s definitions and purpose control." 308 F.Supp. at 1055 (footnote omitted).
The 1940 Relief Act version of section 511 that was applied in Cruz did not contain the express reference to Title 10 that is part of the current provision, which refers to "active duty, as defined in section 101(d)(1) of title 10.” 50 U.S.C. app. § 511 (2)(A)(i).

. Although we conclude that the Trial Court lacked jurisdiction over the non-PTSD claims, we note that, having reviewed the Trial Court’s rulings on the merits of those claims, we see no error in those rulings, for the reasons laid out by Judge Linn in his discussion of the merits of those claims.