NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PETER R. HENRIKSON,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2025-1118

---

Appeal from the United States Court of Federal Claims in No. 1:21-cv-01899-EDK, Judge Elaine Kaplan.

---

Decided:  March 31, 2026

---

JASON E. PERRY, Law Office of Jason Perry, LLC, Wellington, FL, argued for plaintiff-appellant.

EVAN WISSER, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by ERIC P. BRUSKIN, PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before TARANTO, CLEVENGER, and STOLL, *Circuit Judges.*

TARANTO, *Circuit Judge*.

Peter R. Henrikson, after an extensive military career as a pilot, was serving in the Air Force Reserve in a position in which he was classified as a "Generalist Pilot" until he shifted to inactive status in 2016. This case, as now presented on appeal, involves his effort to secure disability-retirement pay specifically based on sinusitis incurred during his service. Mr. Henrikson sought correction of his records to list sinusitis as an unfitting condition preventing him from performing the duties of a Generalist Pilot, but the Air Force Board for Correction of Military Records (Board) determined that Mr. Henrikson's sinusitis did not prevent him from performing his duties in his Generalist Pilot position because his duties were administrative in nature and did not include flying. Mr. Henrikson sought review in the United States Court of Federal Claims (Claims Court), which remanded to the Board for further consideration and explanation. *Henrikson v. United States*, 162 Fed. Cl. 594, 597, 610 (2022) (*Henrikson I*). On remand, the Board again found that Mr. Henrikson had not shown that his duties in his final service position (with a Generalist Pilot classification) included flying or that his sinusitis prevented him from performing non-flying duties, and the Claims Court affirmed the Board's decision. *Henrikson v. United States*, 173 Fed. Cl. 46, 54–56 (2024) (*Henrikson II*). On Mr. Henrikson's appeal to us, we affirm.

I

In 1994, Mr. Henrikson entered service in the U.S. Marine Corps Reserve. *See* J.A. 253; *Henrikson II*, at 48 n.1. After four years, he transferred to the U.S. Air Force, in which he served on active duty as an F-16 pilot until 2008. J.A. 252–53; *see Henrikson II*, at 48 n.1. In 2008, Mr. Henrikson transferred to the Minnesota Air National Guard, in which he served as a pilot in the Active Guard and Reserve Program. J.A. 381; *see Henrikson II*, at 48 n.1. In July 2012, he shifted to the Air Force Reserve, holding a position

for which he had a Generalist Pilot classification, and he remained in that role until 2016, when he elected, in lieu of receiving a discharge with severance pay, to be transferred to the Inactive Status List Reserve Section. J.A. 381–82; J.A. 215; *see Henrikson II*, at 48 n.1.

Mr. Henrikson developed several health conditions during his service for which he sought disability ratings even before his 2016 discharge. In 2014, after he was referred to a Medical Evaluation Board (MEB), the MEB identified three conditions that may have affected his ability to perform at work, including—the only one at issue here—"Sinusitis/Rhinitis" (hereafter simply sinusitis). J.A. 279; *see Henrikson II*, at 48–49. In 2015, both an informal and a formal Physical Evaluation Board (PEB) were convened (the formal PEB at Mr. Henrikson's request), and neither PEB assigned a disability rating to Mr. Henrikson's (service-related) sinusitis. *See* J.A. 64–65; J.A. 93–94. The same year, the Secretary of the Air Force Personnel Council approved the formal PEB's findings on this issue. *See id.*; J.A. 102–03; J.A. 117–19.

In 2017, after his 2016 discharge, Mr. Henrikson petitioned the Board to correct his records. He argued that he should have been retired for three disabilities that rendered him relevantly unfit for service, including his sinusitis, and the records should be altered to so declare. *See* J.A. 33–51. The Board denied Mr. Henrikson relief in 2019. J.A. 28–32.

In 2021, Mr. Henrikson brought suit in the Claims Court to challenge the denial of correction, invoking the retirement-pay provisions of 10 U.S.C. § 1201 *et seq.*, for which the presence of unfitting conditions matters, and the Tucker Act grant of jurisdiction and waiver of sovereign immunity, 28 U.S.C. § 1491. *See* J.A. 13–14, 20; *Henrikson I*, at 604–05. He moved for judgment on the administrative record, arguing that the Board failed to consider certain evidence and arguments he had presented regarding his

sinusitis.  *See Henrikson I*, at 607.  The Claims Court granted Mr. Henrikson's motion, concluding that the Board did not adequately explain why his sinusitis and one other ailment were not unfitting conditions.  *Id.*, at 608–09.  In its remand instructions, the Claims Court instructed the Board to "[i]dentify the duties of [Mr.] Henrikson's office, grade, rank, or rating that he could reasonably be expected to perform and whether piloting aircraft was among those duties." *Id.*, at 610.  That instruction reflected Mr. Henrikson's contention, at issue here, that flying was the aspect of his position for which his sinusitis made him unfit.

On remand, the Board considered and granted a disability rating for the non-sinusitis condition at issue—bringing Mr. Henrikson's disability rating to 40% even before considering the sinusitis issue.  *See* J.A. 635, 638.  Regarding the sinusitis issue, however, the Board ruled against Mr. Henrikson, as it had done earlier.  It found that Mr. Henrikson was "not assigned to flying duties" during the period that he served in the Reserve, and the Board, on that basis, concluded that piloting aircraft was *not* one of his duties as a Generalist Pilot.  J.A. 633.  On that ground, the Board declined to raise Mr. Henrikson's disability rating to the 60% level he sought.

Mr. Henrikson then challenged the Board's decision on remand in an amended complaint before the Claims Court, arguing that it was arbitrary and capricious for the Board to conclude that his sinusitis did not prevent him from performing his duties, including piloting F-16 aircraft.  *See* J.A. 2345–54.  Both Mr. Henrikson and the government moved for judgment on the administrative record.  *See* J.A. 1152; J.A. 2356.  The Claims Court granted judgment in favor of the government, holding that "it was reasonable for the Board to conclude that preponderant evidence did not establish that [Mr.] Henrikson's sinusitis prevented him from reasonably performing the duties of the non-flying position he occupied with the Air Force Reserve." *Henrikson II*, at 55–56.

Mr. Henrikson timely appealed the Claims Court's decision. J.A. 2355. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

II

We review the Claims Court's legal determinations, including its judgment on the administrative record, de novo. *See Cronin v. United States*, 765 F.3d 1331, 1334 (Fed. Cir. 2014). Like the Claims Court, we are limited to determining whether the underlying Board decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations." *Id.* (quoting *Melendez Camilo v. United States*, 642 F.3d 1040, 1044 (Fed. Cir. 2011)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consolidated Edison Co. of New York v. National Labor Relations Board*, 305 U.S. 197, 229 (1938), which may be present even if an opposite conclusion might also be supportable, *Consolo v. Federal Maritime Commission*, 383 U.S. 607, 619–20 (1966).

On appeal, Mr. Henrikson's sole challenge is that the Claims Court erred in upholding the Board's determination that flying was not part of his duties in his Generalist Pilot position in the Air Force Reserve. We conclude that the Board's finding that flying was not part of his duties is supported by substantial evidence, and therefore we conclude that Mr. Henrikson has not identified any reversible error.

A

1. Mr. Henrikson's primary argument on appeal to support his contention that his role required flying relies on the Generalist Pilot portion of the Air Force Specialty Code (AFSC), within the Air Force Officer Classification Directory (Classification Directory)—which he says requires the pilot to "maintain flight status." Henrikson Opening Br. at 11. He points in particular to section 3.5 of the Classification Directory's job description for a

Generalist Pilot, which identifies the "[s]pecialty [q]ualifications" for the role and states: "For award and retention of this AFSC, current aeronautical rating and no permanent disqualification for aviation service as Pilot."  J.A. 1085 (Classification Directory, October 2014 ed.).  But the relied-on language does not by its terms establish the point Mr. Henrikson asserts.

The Generalist Pilot description distinguishes, by separately listing, "2. Duties and Responsibilities" and "3. Specialty Qualifications."  J.A. 1085.  Section 3.5 is within "[s]pecialty [q]ualifications," and the most it says, as relevant here, is that a Generalist Pilot must have a particular "rating" ("current aeronautical rating") and not be permanently disqualified for aviation service.  *Id.*  Those requirements do not mean that flying is actually a duty or responsibility of any Generalist Pilot (or therefore of Mr. Henrikson's position).  Notably, the separate paragraph on "Duties and Responsibilities" does not list actual flying.  *Id.* ("Monitors, evaluates, and directs flying operations and training programs.  Develops requirements for equipment and training.  Prepares and coordinates budgets.  Analyzes rated manpower requirements and formulates personnel policies.  Prepares, coordinates, and disseminates policy directives and implementing instructions.  Develops contingency plans.").  Moreover, the description notes that "[t]hese AFSCs are normally only authorized to identify *nonflying positions* where designation of a specific pilot AFSC is not feasible."  *Id.* (emphasis added).  Thus, the AFSC passage on Generalist Pilot fails to show that flying was part of Mr. Henrikson's job, but in fact lends support to the Board's finding that it was not.

2. The distinction between having an aeronautical rating and actually being required to fly as part of a job is reinforced by a regulation supplied to this court in response to an order of the court directing the parties to file supplemental briefs to elaborate on a matter that the government believed Mr. Henrikson raised in his reply brief.  *See*

Henrikson Reply Br. at 2–3.[1] Air Force Instruction 11-402 addresses the assignment of various aeronautical ratings, and it indicates that such a rating *is* available for a pilot in duties-not-involving-flying [DNIF] status, such a pilot being "considered to be medically qualified for the purposes of this table." S. Appx. 27; *see* S. Appx. 27–37 (table identifying mandatory requirements for award of aeronautical ratings).[2] Thus, having an aeronautical rating does not imply having duties that involve flying. *See* Government Supp. Br. at 3–4, ECF No. 29. Mr. Henrikson, we note, apparently does not dispute that, at the time of his fitness evaluation, he held a DNIF status. *See* J.A. 55 (Medical Evaluation Board Narrative Summary, dated August 3, 2014, acknowledging Mr. Henrikson's DNIF status); J.A. 65 (Informal PEB findings, dated March 24, 2015, acknowledging that Mr. Henrikson's "back issues . . . caused him to be in DNIF status").

---

[1]    In his supplemental response brief, Mr. Henrikson noted that, in his reply brief, he cited Air Force Manual 11-402 (AFMAN 11-402), and not Air Force Instruction 11-402 (AFI 11-402). *See* Henrikson Supp. Br. at 2, ECF No. 31; Henrikson Reply Br. at 2–3. Mr. Henrikson does not dispute that the Claims Court made a passing reference to AFI 11-402 in its consideration of his duties, *see Henrikson II*, at 54, and he does not squarely state that the government forfeited any reliance on AFI 11-402. *See* Henrikson Supp. Br. at 2; *see also* J.A. 1069–70 (Henrikson's response to advisory opinion of the Secretary of the Air Force Personnel Council, citing AFI 11-402). We will therefore consider the government's arguments regarding the AFI 11-402, although we note that it presents just one ground in support of our affirmance of the Claims Court.

[2]    "S. Appx." refers to the supplemental appendix submitted with the government's supplemental brief on March 16, 2026. *See* ECF No. 30.

3. Mr. Henrikson relies on the 2012 Aeronautical Order transferring him from the Minnesota Air National Guard to the Generalist Pilot Position. *See* Henrikson Opening Br. at 12. That Order indicates that Mr. Henrikson was going to be "required to perform frequent and regular flight." J.A. 2913. But the Claims Court appropriately did not consider the Order in its decision, because it was not properly part of the administrative record. *See* Government Response Br. at 10. In any event, the Order states that it expired on January 15, 2014—before Mr. Henrikson's fitness inquiries began in late 2014 and before he assumed inactive status in 2016. *See* J.A. 2913. The Order therefore does not show the existence of flying duties at the relevant time.

4. Mr. Henrikson also previously relied on Air Force Instructions on Medical Examination and Standards (AFI 48-123) to demonstrate that his duties required flying. *See* J.A. 1157–59 (Henrikson Motion for Judgment on the Administrative Record). The Claims Court evaluated that policy to determine whether it helped show that Mr. Henrikson had an aeronautical rating at the relevant time (though that is only a step in the inquiry into job duties). *See Henrikson II*, at 54. AFI 48-123 states at paragraph 3.1.5 that "[i]nactive flyers that do not receive aviation pay IAW AFI-402 are *not required* to maintain Flying Class II standards." *See id.* (emphasis added). The Claims Court reviewed the record before the Board for evidence that Mr. Henrikson received aviation pay during his service in the Air Force Reserve and found none. *See id.* at 54 & n.5 (noting that Mr. Henrikson's cited leave-and-earnings statement, reflecting his receipt of incentive pay, *see* J.A. 1087, predated his service in the Reserve). Mr. Henrikson has not shown error in this determination. Moreover, as already explained, even if Mr. Henrikson's leave-and-earnings statement were evidence of a current aeronautical rating as of his fitness inquiry, that would still not support his contention that flying was a duty of a Generalist Pilot.

B

Mr. Henrikson further argues that the Claims Court applied a subjective analysis to determine the duties involved in the Generalist Pilot role. *See* Henrikson Opening Br. at 12–13. Specifically, Mr. Henrikson contends that the Claims Court failed to analyze the objective duties of Mr. Henrikson's "office, grade, rank, or rating" and instead analyzed only the "subjective duties" that he "actually performed." *Id.* at 13.

We see no improper subjectivity in the Claims Court's (or Board's) analysis of Mr. Henrikson's duties. In its decision, the Claims Court considered the Classification Directory's description of the "duties and responsibilities" of the Generalist Pilot role, which is quoted above. *See Henrikson II*, at 53–54. The listed "duties and responsibilities" of a Generalist Pilot, which do not include piloting aircraft or anything else requiring flight, is an objective basis for the characterization of the role as "administrative in nature." *See Henrikson II*, at 54. Even if Mr. Henrikson was required to maintain some sort of flight qualification, such as a current aeronautical rating, the substantial evidence supports the Board's finding that his duties as a Generalist Pilot did not require him to fly.

III

We have considered Mr. Henrikson's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the decision of the Claims Court.

The parties shall bear their own costs.

**AFFIRMED**